UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**RICARDO BLACKSON,**<br><br>**Defendant.** | **Case No. 1:25-mj-188 (ZMF)** |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm) and 18 U.S.C. § 3142(d)(1)(A)(iii) (On Probation or Parole), as the Defendant, Ricardo Blackson, is charged with violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm). The Defendant's instant arrest occurred after he was found guilty on November 10, 2009, of Second-Degree Murder While Armed in Superior Court case 2009-CF1-000414. The Defendant was sentenced to thirty years' incarceration on January 22, 2010, but was resentenced on November 14, 2024, under the Incarceration Reduction Amendment Act (IRAA) to the original sentence, with the remainder of the sentence suspended as to all but time served. He was also sentenced to five years' supervised release, which was suspended in favor of five years' supervised probation. Less than a year after his release from prison and while on supervised probation, Defendant Blackson was arrested in Washington D.C. for unlawfully possessing a firearm on August 28, 2025, leading to this instant charge. The Defendant's troubling criminal history, as well as his apparent inability to comply with conditions of release, puts the community at risk, and the relevant factors of the Bail Reform Act support his detention.

## **BACKGROUND**

On August 29, 2025, Defendant Blackson was charged by complaint with a single count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). An initial appearance was held before the Honorable Magistrate Judge Zia M. Faruqui that same day. During the Defendant's initial appearance, the Government orally moved for Mr. Blackson's detention pending trial pursuant to 18 U.S.C. § 3142(f)(1)E) (Firearm or Dangerous Weapon) and 18 U.S.C. § 3142(d)(1)(A)(iii) (On Probation or Parole).

### *The Instant Offense*

On August 28, 2025, at approximately 2:15 p.m., members of the United States Park Police were patrolling the 4000 Block of South Capitol Street SW, in Washington D.C. with federal law enforcement officers. United States Park Police Officer Kevin Brennan, and his partner United States Park Police Officer Christian Callahan, were in full uniform and operating an unmarked police vehicle while patrolling the area.

While patrolling, Officer Callahan observed a red Audi vehicle traveling with no front tag affixed and heavy windshield tint. Due to the heavy tint of the windows, Officers Brennan and Callahan were unable to make out the occupants of the vehicle.

Law enforcement members were aware that vehicles registered in the District of Columbia are required to display both a front and rear license plate by District of Columbia Municipal Regulation. Law enforcement members were also aware that vehicles in the District of Columbia are forbidden from having heavily tinted windows on vehicles.

Recognizing the numerous violations, Officers Brennan and Callahan conducted a traffic stop. Officer Brennan approached the driver, who was later identified by his District of Columbia driver's license as Ricardo Blackson and requested his identification and vehicle documents. Blackson was the sole occupant of the vehicle. It was later determined that Blackson was the registered owner of the vehicle.

While talking with Blackson, Officer Brennan observed a single green camouflage backpack on the rear passenger floorboard. Officer Brennan asked Blackson who the backpack belonged to and Blackson indicated it was his child's backpack. Officer Brennan then also asked Blackson if he had ever been arrested, and Blackson indicated he was recently released from prison following a 17-year sentence for a murder conviction.

Officer Brennan asked Blackson if he could look in the backpack. Blackson asked Officer Brennan if there was a reason to search the vehicle. Officer Brennan then noted an immediate change in Blackson's demeanor. Officer Brennan clarified that he did not ask about the search of Blackson's vehicle, but that he was asking about searching the backpack.

Officer Callahan began to issue District of Columbia Notice of Infractions due to the multiple infractions observed by Officers Brennan and Callahan. During Officer Brennan's continued investigation and questioning, Blackson then changed his story and stated the backpack did not belong to him, but it belonged to his girlfriend's daughter. Officer Brennan noted that Blackson was now changing his story as it related specifically to the backpack.

Based on Officer Brennan's training, knowledge, and experience, Officer Brennan recognized Blackson's behavior as consistent with an individual who was potentially concealing contraband.

3

While Officer Callahan continued to write the Notice of Infractions, Officer Brennan requested a Metropolitan Police Department Firearms Detection K9 to respond to the scene to conduct a free air sniff at approximately 2:29 p.m.

MPD K9 Officer Alston (K9-20) and his partner, K9 Joker responded at approximately 2:39 p.m. and were deployed for a free air sniff. At approximately 2:44 p.m., K9 Joker gave a trained positive alert indicating the presence of firearms within the vehicle. Blackson was detained in handcuffs while the investigation continued.



*Figure 1 – Canine After Positive Read*

Upon the positive alert provided by the canine, Officer Brennan recovered the backpack from Blackson's vehicle. Officer Brennan opened the front compartment of the backpack and immediately observed a firearm.

4



*Figure 2 – Firearm Recovered From Backpack Inside BLACKSON's Vehicle*

The firearm was examined and determined to be a 9mm Ruger MAX-9 bearing serial number 350040751. The firearm was loaded with one round in the chamber and a magazine with the capacity to accept 10 rounds of 9mm ammunition. The magazine was loaded with ten rounds.



*Figure 3 – Firearm Recovered*

The firearm appeared to be fully functional, designed to expel projectiles by the action of an explosive, has a barrel length of less than 12 inches, and is capable of being fired by use of a single hand. The serial number appeared gouged though the serial number remained visible. A subsequent NCIC query revealed the firearm was STOLEN out of the District of Columbia.

Law enforcement members also recovered the following additional items from inside the backpack:

- Black digital scale
- Silver digital scale
- Numerous small mylar bags (drug packaging paraphernalia)
- Numerous silver mylar bags (drug packaging paraphernalia)
- Plastic cups containing a green leaf substance
- 31 individually packaged mylar bags of green leaf substance



*Figure 4 – Multiple Mylar Bags*

An additional package of green leaf substance was recovered from the center console of the vehicle. Law enforcement also recovered $485 in United States currency in mostly smaller denominations from Blackson's wallet.



*Figure 5 – Items Recovered From Backpack*

The 31 individually packaged bags had a combined weight of 9.38 ounces of green leafy substance. Blackson was placed under arrest and transported to the Metropolitan Police Department.

A police records check determined Blackson did not have a license to carry a firearm in the District of Columbia and that Blackson did not have a firearm registered in the District of Columbia.

During a law enforcement check of Blackson's criminal history, law enforcement members learned that Blackson had previously been convicted of a crime punishable by a term of

7

imprisonment exceeding one year. Blackson was previously convicted in D.C. Superior Court case 2009 CF1 000414 for Murder II While Armed. Accordingly, Blackson would have been aware that he was previously convicted of a crime punishable by a term of imprisonment exceeding one year at the time he was found in possession of the firearm and ammunition.

There are no firearm or ammunition manufacturers in the District of Columbia and, as such, the firearm and ammunition must have traveled into the District of Columbia via interstate commerce.

### *Defendant Blackson's Criminal History*

On December 3, 2008, Metropolitan Police Department members responded to a report of a shooting within an apartment complex at 1200 North Capitol Street, NW in Washington D.C. Law enforcement found the victim on the hallway floor of the apartment complex with multiple gunshot wounds about his body. He was taken to the hospital, where he succumbed to his injuries.

Law enforcement members who were investigating the case recovered surveillance video from within the apartment complex which showed the suspect walking in the hallway directly behind the decedent. Surveillance video also showed the same suspect running after multiple gunshots were heard in the hallway. The suspect grabbed the handrail as he was running. Law enforcement members were able to obtain latent prints from the handrail to analyze them. The prints matched that of the Defendant. Moreover, the surveillance video was shown to a member of law enforcement who was familiar with the apartment complex. That individual positively identified the suspect in the surveillance video as Defendant Blackson.

After a jury trial, the Defendant was convicted on November 11, 2009, on one count of Second-Degree Murder While Armed, one count of Possession of a Firearm During a Crime of

Violence, and one count of Carrying a Pistol Without a License. On January 22, 2010, the Defendant was sentenced to a total of thirty years' incarceration followed by five years' supervised release. On November 13, 2024, the Defendant was resentenced to the original sentence, with all but time served suspended, followed by 5 years' supervised release, suspended, in favor of 5 years' supervised probation under the IRAA. At the time of the instant arrest, the Defendant was serving the five-year period of supervised probation.

Prior to his Second-Degree Murder conviction, the Defendant had several interactions with law enforcement which ranged from traffic infractions to assaultive conduct. In November 2006, he was arrested for not having a permit in case number 2006 CTF 25941 in Washington, D.C. This case was ultimately dismissed. In August 2007, the Defendant was arrested and charged with Attempted Second-Degree Theft in case number 2007 CMD 021474 in Washington, D.C. This case was ultimately dismissed also. In December 2007, the Defendant was charged with Assault with a Dangerous Weapon and Possession of a Firearm During a Crime of Violence in case number 2008 CF2 005120 in Washinton, D.C. The case was brought before a jury, and the Defendant was acquitted of both charges in August 2008. In May 2008, Defendant Blackson was charged with Fleeing Law Enforcement Officers, Reckless Driving, and Operating After Suspension in case number 2008 CTF 010165 in Washington, D.C. The Defendant was convicted and sentenced to a total of 180 days incarceration and two years' unsupervised probation. In July 2008, the Defendant was charged with Simple Assault in 2008 DVM 001766 in Washington, D.C. This case was ultimately dismissed. The Defendant was also charged in August 2008 with Operating after Suspension and Contempt in 2008 CTF 019484 in Washington, D.C. The charges were ultimately dismissed.

9

## **ARGUMENT**

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210, and *Williams*, 798 F. Supp. at 36.

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142 (e). The Act provides however, for certain crimes, that there is a rebuttable presumption that no conditions or combination of conditions will assure the safety of the community. *See id.*

The United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)E (Firearm or Dangerous Weapon) and 18 U.S.C. § 3142(d)(1)(A)(iii) (On Probation or Parole) because the Defendant is charged with committing a firearm offense and was on supervised probation at the time of the offense. A review and understanding of the facts and circumstances in the instant matter demonstrate that there are no conditions or combination of conditions that would assure the safety

of the community. *See* 18 U.S.C. § 3142(e)(1). All four § 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

The facts of the instant case and the Defendant's criminal history, when reviewed together under the 3142(g) framework, demonstrate that there is no condition or combination of conditions that will assure the safety of the community if the Defendant were to be released and therefore the Court should detain him pending trial.

## I.     **The Nature and Circumstances of this Offense Merit Detention.**

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The Defendant is charged with a serious offense carrying significant penalties. For violating 18 U.S.C. § 922(g), the Defendant faces a maximum sentence of up to fifteen years' imprisonment pursuant to 18 U.S.C. § 924(a)(8). On August 28, 2025, law enforcement conducted a traffic stop of a vehicle that the Defendant was operating, after they observed multiple vehicle infractions. The vehicle was registered to the Defendant, and he was the driver and sole occupant. After a search of the vehicle, a backpack was recovered from the vehicle. The backpack contained a loaded firearm and approximately 9 ounces of leafy green substance that was packaged in a manner consistent with distribution. The backpack also contained various drug paraphernalia, such as multiple baggies and two digital scales. Taken together, the Defendant poses a danger to the community and the Court should take the threat that he poses seriously.

As a threshold matter, the Court has repeatedly held that possession of a firearm, when loaded or carried in a concealed manner as in this case, poses a risk of danger to the community. *See, e.g., United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Wills*, 311 F. Supp. 3d 144, 148 (D.D.C. 2018) (citing *United States v. Taylor*, 289 F.Supp.3d 55, 71 (D.D.C. 2018)) ("[A]lthough the mere fact that the defendant possessed a firearm does not constitute evidence of a danger to the community, possession of a firearm by a convicted felon who is allegedly engaged in illegal drug distribution is a different matter"); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.").

Here, the Defendant possessed a loaded firearm and multiple mylar bags full of a green leafy substance consistent with marijuana. The Defendant also possessed drug paraphernalia, such as tiny baggies and digital scales, which suggests distribution rather than personal use. The Defendant, who is currently serving a period of supervised probation for Second-Degree Murder While Armed, was ordered not to possess any firearms as a condition of his reduced sentence. Yet, less than a year after his sentence was reduced, the Defendant was found not only in possession of

a firearm unlawfully, but he also possessed contraband which was indicative of distribution of drugs to the community. The danger that the Defendant poses is great and warrants detention in this case.

While the Defendant is charged with a possessory offense, courts in this District have warned against discounting the inherent danger associated with loaded firearms. *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) (the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach").   Here, the firearm recovered was fully loaded with one round chambered. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling.")

Moreover, not only was the firearm ready with a bullet loaded in the chamber, but it was also loaded with enough ammunition to be fired ten more times. The Defendant's possession of the firearm was also unlawful, as he did not have a proper license to carry a firearm and was previously convicted of an offense that barred him from illegally possessing any firearms. Despite this, he was able to obtain a pistol, suggesting the Defendant's ability to illegally obtain a firearm, and therefore had an illicit source to obtain the weapon.   Firearms registration and possession laws within the District are designed to prohibit this type of conduct for the safety of

13

the community. In this case, the Defendant broke these laws, demonstrating his inability and unwillingness to abide by the rules that govern and protect the community. Because of the Defendant's criminal history, his possession of a firearm poses a heightened danger.

Unlawful gun possession is so problematic, particularly by someone who has the Defendant's criminal history, because violent crimes committed with guns in the District persist.[1] In 2025, there have been 87 homicides and 339 assaults with a dangerous weapon in the District of Columbia. Up until now in 2025, the total amount of violent crime offenses is at 1,685, according to statistics recorded by the Metropolitan Police Department.[2] As such, the nature and circumstances of this offense weigh heavily in favor of detention.

## II. The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. Here, the Government's case against the Defendant is strong.

When law enforcement observed the Defendant's vehicle, they observed multiple vehicle infractions that resulted in their initiating a traffic stop. During the continued investigation on scene, a canine was brought after law enforcement observed the Defendant's behavior and noted the inconsistencies in his story. After a positive hit from the canine, law enforcement recovered from the backpack that was in the backseat of the Defendant's vehicle, a loaded firearm and multiple mylar bags containing a green leafy substance that was packaged for distribution. The

---

[1] *See Crime Cards*, Metro. Police Dep't https://crimecards.dc.gov/all:violent%20crimes/with%20a%20gun/1:year%20to%20date/citywide:heat (last visited August 29, 2025).

[2] *See District Crime Data at a Glance: 2024 Year-to-Date Crime Comparison, Metro Police Dep't,* https://mpdc.dc.gov/page/district-crime-data-glance (last visited August 29, 2025)

amount of the green leafy substance in his possession and the method in which they were packaged suggested to law enforcement that the Defendant possessed the drugs for distribution and not for personal use.

In addition, this factor should be equally weighed with the other factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same conclusion after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

Indeed, "[i]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and the Defendant should be detained pretrial.

### III.   The Defendant's History and Characteristics Merit Detention.

The third factor, the Defendant' history and characteristics, likewise weigh in favor of detention. The Defendant was previously convicted of shooting another individual and killing him.

15

According to police reports, the Defendant, stalked his victim in the hallway of an apartment complex, and shot him multiple times about the body, which led to his death. "The serious and violent nature of these prior convictions are probative of both defendant's capacity for and willingness to use firearms in a manner that poses a risk to others and the community." *Blackson*, 2023 WL 1778194, at *10.

As indicated by his conviction for Second-Degree Murder While Armed, the Defendant has no qualms about possessing firearms and using one to seriously harm, and kill, another person. Equally troubling is that he continues to unlawfully arm himself with deadly weapons, including the handgun that was found in his vehicle during the instant case. Here, the Defendant has been convicted of one of the most serious crimes possible and yet a lengthy period of incarceration followed by supervision has not deterred him from continuing to illegally acquire and possess a gun. It is particularly concerning because the Defendant was provided a benefit under the IRAA, which reduced his mandatory sentence by almost half. Less than a year after he was given the opportunity of a reduced sentence, the Defendant was found with another loaded weapon, something he was explicitly ordered by the Court not to do.[3]

Despite being afforded the opportunity to be released into the community with a reduced sentence, Defendant Blackson continues to violate the law. His penchant for violence is particularly startling given the fact that he has been incarcerated for a long period of time, which theoretically should have limited his opportunities for additional criminal conduct. *See Blackson*, 2023 WL 1778194, at *10 ("This 17-year period of incarceration, until his release eight months

---

3 In his amended Judgment and Commitment order from D.C. Superior Court Judge Todd E. Edelman dated November 13, 2024, the Defendant was provided several release conditions, to include "possess no firearms or other dangerous weapons."

16

ago, significantly limited his opportunities for additional criminal conduct, leaving that time period as an assessment of his nonviolence inconclusive."). Despite the structure provided within the Bureau of Prisons, the Defendant was undeterred and continued to violate the rules and regulations were put in place. *See United States v. Munchel*, 991 F.3d 1273, 1281 (D.C. Cir. 2021) (concluding that courts can and should "consider whether it believes the defendant will actually abide by its conditions when making the release determination"); *see, e.g., United States v. Glasgow*, No. 1:20-cr-27-7 (KBJ), 2021 U.S. Dist. LEXIS 109972, at *37 (D.D.C. June 11, 2021) ("Because Glasgow has previously disobeyed a court-ordered condition of pre-trial supervision, the Court has little faith that he would not do so again if released pending trial.").

In sum, this factor overwhelmingly weighs in favor of detention and the Court has little reason to believe that the Defendant will follow any orders provided by this Court if released.

### IV.     The Defendant Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by the Defendant's release, similarly overwhelmingly weighs in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. The Defendant's possession of this firearm alone presents a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). But in this case, the Defendant did not just simply possess the firearm, since he was also found with a significant amount of illegal substances that

17

were primed for distribution and sale. The Defendant's possession of a firearm is already a danger posed to the community. However, his apparent intent to distribute drugs into the community poses even more of a danger to a community already plagued with addiction.

Drug dealers routinely possess firearms to protect their illegal product, their person, and their property. Rarely is there a presence of drugs without the presence of firearms. And the presence of both only begets violence. This danger was recognized by the Supreme Court in *Smith v. United States*:

> When Congress enacted the current version of § 924(c)(1), it was no doubt aware that the drugs and guns are a dangerous combination. In 1989, 56% of all murders in New York City were drug related; during the same period, the figure for the Nation's Capital was as high as 80 percent.

508 U.S. 223, 240 (1993).

While the defendant's crimes did not result in any direct violence against another, unlawful possession, in conjunction with intent to engage in drug trafficking, can lead to dangerous consequences, thereby underscoring the need to take such crimes seriously. As such, the Defendant presents a real danger to the community.

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *Munchel*, 991 F.3d at 1280 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). The Court is required to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. *United States v. Hale-*

*Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283). Here the Defendant poses an obvious and articulable threat to the community and should be detained pretrial in this case.

## **CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court detain the Defendant pending trial on these charges.

> Respectfully submitted,
>
> JEANINE FERRIS PIRRO
> UNITED STATES ATTORNEY
>
> By:  */s/ Sabena Auyeung*
> Sabena Auyeung
> Assistant United States Attorney
> 601 D Street NW
> Washington, D.C. 20530
> 202-803-1622
> sabena.auyeung@usdoj.gov